IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00027-KDB-DCK

| | |
|---|---|
| JEFFREY KEITH RECTOR, <br><br> Plaintiff, <br><br> v. <br><br> NIRVANA EXTRACTIONS, LLC; CHRIS SCHROEN; SEAN MITTET; THOMAS GUINN; AND SCOTT MASTRO, <br><br> Defendants. | ORDER |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 6) and Partial Motion to Dismiss (Doc. No. 8). The Court has carefully considered these motions, the parties' briefs and exhibits, and other relevant pleadings of record. For the reasons discussed below, the Court will **GRANT** in part and **DENY** in part the Defendants' motions.

## I.   LEGAL STANDARD

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

A party invoking federal jurisdiction has the burden of establishing that personal jurisdiction exists over the defendants. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, when "the court addresses the question [of personal jurisdiction in a Rule 12(b)(2) motion] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. In considering a challenge on such a

1

record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676 (internal citations omitted). While a plaintiff "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist," *IMO Indus., Inc. v. Seim S.R.L.*, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006), if a plaintiff comes "forward with affidavits or other evidence to counter that of the defendant ... factual conflicts must be resolved in favor of the party asserting jurisdiction...." *Id.*

In deciding whether this Court has personal jurisdiction over a defendant, the Court must determine: (1) whether the North Carolina long-arm statute confers personal jurisdiction; and (2) whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. *Gen Latex & Chem. Corp. v. Phoenix Med. Tech.*, 765 F. Supp. 1246, 1248-49 (W.D.N.C. 1991). Because the North Carolina long-arm statute extends jurisdiction to the bounds of due process, the statutory inquiry ultimately merges with the constitutional inquiry, becoming one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

Under this due process analysis, a court may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980) (explaining that this principle "protects ... defendant[s] against the burdens of litigating in a distant or inconvenient forum" and "acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal

2

sovereigns in a federal system"); *see also Wallace v. Yamaha Motors Corp, U.S.A.*, No. 19-2459, 2022 WL 61430, at *2–3 (4th Cir. Jan. 6, 2022). There are two types of constitutionally permissible personal jurisdiction – general and specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (referring to general jurisdiction as "all-purpose" jurisdiction and specific jurisdiction as "case-linked" jurisdiction). General jurisdiction "requires continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. V. Inst of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n. 15 (4th Cir. 2009) (internal quotations omitted). Specific jurisdiction "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in the state." *Id*.

To decide whether specific jurisdiction exists, the Court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 396 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002)). For the first element, a defendant has availed itself of the privilege of conducting business in a state—and thus the benefits and protections of the state's laws—when the defendant "'deliberately' has engaged in significant activities within a [s]tate" or "has created 'continuing obligations' between [itself] and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984), and *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643, 648 (1950)). This standard "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," or due to "the 'unilateral activity of another party

3

or a third person.'" *Id.* at 475 (quoting *Keeton*, 465 U.S. at 774, *World-Wide Volkswagen*, 444 U.S. at 299, and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

For the second element—whether a plaintiff's claims arise out of a defendant's activities directed at the state— "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers*, 582 U.S. at 264 (alteration in original). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

For the third element, the Court considers the constitutional reasonableness of exercising jurisdiction by evaluating several factors, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King*, 471 U.S. at 477). In other words, the exercise of jurisdiction should not "make litigation 'so gravely difficult and inconvenient' that a party is unfairly at a 'severe disadvantage' in comparison to his opponent." *Id.* (quoting *Burger King*, 471 U.S. at 478).

**B. Motion to Dismiss for Insufficient Process**

A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or "form" of the process itself, while a motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of "service" of process. *See* Fed. R. Civ. P. 12(b)(4), (b)(5); *Washington v. Cedar Fair, L.P.*, 2023 U.S. Dist. LEXIS 16559, at *5. In other words, a Rule 12(b)(4) motion to dismiss objects to a

4

defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act of delivery. *Id.*

When service of process is challenged, the plaintiff bears the burden of establishing that process was sufficient, and that service of process was carried out in accordance with Rule 4 of the Federal Rules of Civil Procedure. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (holding the plaintiff must prove service of process if challenged); *see also Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016) (per curiam) (unpublished). In determining whether a plaintiff has satisfied his burden, the court must interpret the technical requirements liberally "as long as the defendant had actual notice of the pending suit." *Id.* "When the process gives the defendant actual notice of the pendency of the action, the rules ... are entitled to a liberal construction" and "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Still, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Id.*

**C. Motion to Dismiss for Failure to State a Claim**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable

5

to the plaintiff in weighing the legal sufficiency of the complaint." *Id.* Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTUAL BACKGROUND

Plaintiff Jeffery Keith Rector ("Plaintiff"), the sole proprietor of an industrial hemp farm, filed this action against Defendant Nirvana Extractions, LLC d/b/a Brushy Mountain Extractions, Brushy Bee CBD, ("Nirvana Extractions"), a hemp sale and extraction business, and the officers and agents of Nirvana Extractions: Sean Mittet, Scott Mastro, Thomas Guinn, and Chris Schroen (collectively "Defendants"). *See* Doc. No. 1-2. At the time that this action arose, Plaintiff alleges that Defendants Mittet, Mastro, Guinn, and Schroen were involved in Nirvana Extractions as follows: Mittet was the registered agent, as registered to the North Carolina Secretary of State; Mastro was working as the managing representative; and Guinn and Schroen were each working as an agent, employee, and representative. *Id.* at ¶¶ 4-7.

In this action Plaintiff alleges three causes of action: (1) Breach of Contract; (2) Unjust Enrichment; and (3) Unfair and Deceptive Trade Practices (UDTP) in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA"), N.C. Gen. Stat. § 75-1.1. Each claim arises from a contract between Plaintiff and Defendants for the purchase of 4,000 pounds of hemp for the sale price of $180,000 (the "Agreement"). *See id.*

In the Agreement, Defendants agreed to make an initial payment of $90,000 to Plaintiff, to be followed by a second payment of $90,000 six weeks later when Defendants received the

6

hemp from Plaintiff's farm. *See id.* at Exhibits. E, F. Plaintiff alleges that nine weeks after the initial payment was made, Defendants requested the hemp to be delivered to Nirvana Extractions' hemp storage and processing plant. *Id.* at ¶ 14. Plaintiff agreed, weighing the purchased hemp, informing the Defendants to store the hemp under a tarp to avoid drying out, and delivering it to the storage and processing plant. *Id.* at ¶ 15. After delivery, Plaintiff sought payment of the remaining $90,000, which Defendants refused to pay, arguing that they received less than the agreed-upon 4,000 pounds of hemp. *See id.* As a result, Plaintiff filed this action in the Superior Court of Wilkes County, North Carolina. Subsequently this action was removed to this Court by Nirvana Extractions.

Mastro and Mittet have now moved to dismiss the Complaint on the grounds that the Court lacks personal jurisdiction over them pursuant to Federal Rule of Civil Procedure 12(b)(2), and 12(b)(4) and 12(b)(5), respectively. Additionally, Mastro and Mittet have moved to dismiss all of Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In turn, Nirvana Extractions has moved to dismiss only the UDTP claim under the same rule. The pending motions have been fully briefed by all parties and are now ripe for the Court's decision.

### III. DISCUSSION

**A. Mastro's 12(b)(2) Motion to Dismiss**

As stated above, to determine whether an exercise of personal jurisdiction over a defendant is appropriate, the Court must consider whether "the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst*, 334 F.3d at 397 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Mastro argues that this Court does not have personal jurisdiction in this case because Plaintiff fails to establish general or specific jurisdiction. The Court agrees.

7

#### i. General Jurisdiction

The Court finds that the Complaint falls short of establishing a prima facie showing of general jurisdiction. A court can properly assert general jurisdiction over a defendant when the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Bristol-Meyers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 924). Here, Mastro is indisputably domiciled in Texas. Accordingly, this Court does not have general jurisdiction over this Defendant.

#### ii. Specific Jurisdiction

As outlined above, to determine whether there are sufficient minimum contacts for specific personal jurisdiction, the Court considers three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the . . . claims [arose] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014). The first of the three factors "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contact." *Burger King*, 471 U.S. at 475.

Here, Plaintiff has alleged that Defendants entered into a contract for the purchase of 4,000 pounds of hemp worth $180,000 from Plaintiff's farm in North Carolina in November 2019. Plaintiff's only allegation in the Complaint that explicitly mentions Mastro is when he is described

as the managing representative of Nirvana Extractions. Doc. No. 1-2 at ¶ 5. In response to the allegations in the Complaint, Mastro submitted an affidavit stating that he is a minority member of Beekeeper and prior to Beekeeper's acquisition of membership interests in Nirvana Extractions in October 2021, he had no affiliation with Nirvana Extractions. Doc. No. 6-2 at ¶¶ 4-8. Mastro further alleges that he was not involved in the negotiation of the contract, the creation of the contract, or the execution of the contract. Thus, other than his minority stake in Beekeeper, which acquired a stake in Nirvana Extractions approximately two years after the event responsible for this dispute, Mastro allegedly has no contacts with North Carolina. Significantly, Plaintiff has not proffered allegations that sufficiently suggest otherwise.[1] Accordingly, the Court finds that Mastro's contact with North Carolina is too attenuated to rise to the level of purposeful availment, and additionally the claims made by Plaintiff against him do not arise from this attenuated North Carolina contact. Therefore, the Court finds that it does not have personal jurisdiction over defendant Mastro and will dismiss the claims against him pursuant to Rule 12(b)(2).

**B. Mittet's 12(b)(4) and 12(b)(5) Motion to Dismiss**

Mittet first moves to dismiss Plaintiff's Complaint under Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure. Mittet argues Plaintiff failed to serve him in compliance with Federal Rule 4(e).

To properly effect service of process, Federal Rule of Civil Procedure 4(e) allows for service of a summons and complaint on an individual by:

---

[1] Plaintiff has provided evidence in Exhibit A and C that suggest Mastro is a managing member of Nirvana Extractions. Exhibit A is dated January 11, 2022, and Exhibit C is dated January 13, 2023. These documents do not suggest that Mastro had anything to do with Nirvana Extractions at the time of the dispute, and in turn do not create a factual conflict with Mastro's affidavit. If Plaintiff had provided evidence to actually counter the affidavit, then the factual conflict would have been resolved in Plaintiff's favor.

9

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

F.R.C.P. 4(e). North Carolina law, in turn, allows for the service of process upon a natural person "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C.R. Civ. P. 4(j)(1)(c).

Mittet argues that Plaintiff's service of process was inadequate under F.R.C.P. 4(e)(1-2) because the service was directed toward Nirvana Extractions and not directed toward him in an individual capacity, and the service was additionally directed toward him at an address that he neither resides nor regularly works. While Mittet may be correct that Plaintiff attempted to serve process at an unaffiliated address, the Court disagrees with Mittet's argument that process was only served on Nirvana Extractions and not on Mittet. Under North Carolina law, "a defendant who seeks to rebut the presumption of regular service generally must present evidence that service of process failed to . . . [provide] defendant with notice of the suit, rather than simply questioning the identity, role, or authority of the person who signed for delivery of the summons." *Granville Med. Ctr. v. Tipton*, 160 N.C. App. 484, 493 (2003) (citations omitted).

Here, Plaintiff used Mittet's LinkedIn page to identify his employer as Brushy Mountain Extractions, and in turn used Brushy Mountain Extractions' website to locate its address in Moravian Falls, North Carolina. Plaintiff then served process by Certified Mail, consistent with

10

N.C.R. Civ. P. 4(j)(1)(c), addressed to the location in Moravian Falls, North Carolina with the recipient's name reading "Attn Sean Mittet Nirvana Extractions LLC dba Bru." Mittet has provided no evidence that would suggest service to his place of employment did not provide him with notice of the suit. Accordingly, the Court finds that Plaintiff has proffered enough evidence of properly effected service to survive Millet's jurisdictional challenge based on service.

**C. Mittet's 12(b)(6) Motion to Dismiss**

In addition to their contention that the Court lacks jurisdiction over them, Defendants Mittet and Mastro have moved to dismiss Plaintiff's claims of breach of contract, unjust enrichment, and UDTP for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), and have requested attorney's fees resulting from a frivolous and malicious UDTP claim. After finding that this Court does not have personal jurisdiction over Mastro, the Court need not address Mastro's 12(b)(6) motion, but rather will focus only on Mittet.

**i. Breach of Contract**

Plaintiff's first claim alleges that Mittet breached a contract with Plaintiff by failing to make the final $90,000 payment following the delivery of the hemp. Under governing North Carolina law, the elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract. *Montessori Children's House of Durham v. Blizzard*, 244 N.C. App. 633, 781 S.E.2d 511, 514 (2016); *Herrera v. Charlotte Sch. Off L., LLC*, No. 17 CVS 1965, 2018 WL 1902556, at *9 (N.C. Super. Apr. 20, 2018).

Under North Carolina law, a valid contract between two parties can only exist when the parties "assent to the same thing in the same sense, and their minds meet as to all terms." *Normille v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) (quoting *Goeckel v. Stokely*, 236 N.C. 604, 607, 73 S.E.2d 618, 620 (1952)). Here, Plaintiff alleges that he "came to a mutual agreement" with

11

Defendants during a November 16, 2019, meeting. While Plaintiff has also alleged that the Defendants present at the meeting were an unnamed Nirvana Extractions employee and Defendant Schroen (and thus did not include Mittet), it can be plausibly inferred that the unnamed Nirvana Extractions employee and Schroen were at the meeting under the direction of Mittet and other Nirvana Extractions employees based on Plaintiff's allegations of a mutual agreement among all Defendants.[2] From Plaintiff's allegations of a meeting, mutual agreement, and subsequent delivery of hemp, it is plausible that a contract existed between Defendants and Plaintiff. Doc. No. 1-2 at Exhibit E, F. The agreement was for total payment of $180,000, of which Plaintiff has alleged the Defendants paid only half. Again, the allegations state that "Defendants have not issued payment," thereby including Mittet in this decision. Based on the allegations that "Defendants" arranged and were involved with the meeting, first payment, and subsequent failed payment, it can be plausibly inferred that Mittet was part of these actions. Accordingly, the Court finds that Plaintiff has plausibly alleged that Mittet breached the contract.

### ii. Unjust Enrichment

Alternatively, Plaintiff's second claim alleges Mittet has been unjustly enriched for receiving $180,000 worth of hemp when only paying $90,000. Under North Carolina law to succeed on a claim for unjust enrichment, a plaintiff must plead and establish: (1) a measurable benefit was conferred on the defendant; (2) the defendant consciously accepted that benefit; and (3) the benefit was not conferred officiously or gratuitously. *Chamberlain v. Securian Fin. Grp., Inc.*, 180 F. Supp. 3d 381, 406 (W.D.N.C. 2016).

---

[2] Mittet has filed an affidavit stating that he was not working with Nirvana Extractions until October 2021 and could not have been part of the actions that led to this dispute. While this affidavit may well be relevant at a later stage, any consideration given by the Court here would be inconsistent with the applicable 12(b)(6) standard. Thus, the Court will take the facts pled as true, regardless of any conflict with this affidavit.

Here, Mittet argues that Plaintiff has failed to allege any facts that a benefit was conferred on him or that he consciously accepted such a benefit. The Court disagrees. Plaintiff has alleged that "Defendants" received a measurable benefit with the $180,000 worth of hemp, and, accepting this allegation as true as we must, it is plausible that Mittet is included in the group of "Defendants" that received this benefit. Additionally, Plaintiff has alleged that the hemp was delivered to a storage facility owned by Defendants in Moravian Falls, North Carolina. Given Mittet's alleged involvement with Nirvana Extractions, it is plausible that he was aware of the delivery and acceptance of the hemp. Finally, the allegations relating to the contract described above make it plausible that the hemp was in fact delivered in exchange for payment and not gratuitously. Thus, the Court finds that Plaintiff has plausibly alleged that Mittet has been unjustly enriched by the delivery of the hemp and subsequent failure to pay.

### iii. Unfair and Deceptive Trade Practices

Plaintiff's third claim alleges that Mittet has committed unfair and deceptive trade practices by failing to pay for the second half of the delivered hemp. The North Carolina Unfair and Deceptive Trade Practices Act "makes unlawful unfair or deceptive acts or practices in or affecting commerce that proximately injures a plaintiff." *Duke Energy Carolina, LLC v. NTE Carolinas II, LLC*, 2022 WL 2293908, at *18 (W.D.N.C. June 24, 2022). For Plaintiff to prevail on its UDTPA claim it must show that "(1) the defendant committed an unfair or deceptive act or practice; (2) the act or practice in question was in or affecting commerce; and (3) the act or practice proximately caused injury to the plaintiff." *Elsayed v. Family Fare LLC*, 2020 WL 4586788 at *14 (M.D.N.C. Aug. 10, 2020). Additionally, "North Carolina courts have repeatedly held that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UTPA,] N.C.G.S. § 75-1.1'" *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347

13

(4th Cir. 1998) (citations omitted). "North Carolina law requires a showing of 'substantial aggravating circumstances' to support a claim under the UTPA.'" *Id.* (citing *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 418 S.E.2d 694, 700 (1992)).

Here, Plaintiff has done nothing more than allege a breach of contract and unjust enrichment. In fact, in the Complaint Plaintiff says that "Defendant[s] have knowingly and purposefully unfairly and deceptively received $90,000 of value in hemp, thru breach of contract." A UDTP claim based merely on a breach of contract – without proof of aggravating circumstances which are not sufficiently alleged here – must fail. Accordingly, the Court finds that Plaintiff has not alleged a claim under the NC UDTPA and that claim will be dismissed without prejudice.

**iv. Attorney's Fees**

Finally, Mittet argues that he is entitled to attorney's fees based on Plaintiff's frivolous and malicious UDTP claim. Mittet is correct that a "presiding judge may . . . allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party . . . when the party instituting the action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1. A claim is "'frivolous' where its 'proponent can present no rational argument based upon the evidence or law in support of it.'" *Philips v. Pitt Cnty. Mem'l Hosp., Inc.*, 242 N.C. App. 456, 458, 775 S.E.2d 882, 884 (2015) (citations omitted). And a claim is "'malicious' where it is 'wrongful and done intentionally without just cause or excuse or as a result of ill will.'" *Id*.

Here, Plaintiff has made clear in the Complaint that his basis for the UDTP claim is the breach of contract.[3] While the Court did find that Plaintiff failed to allege any sort of substantial

---

[3] The Court often encounters this issue, and it appears to unfortunately remain standard practice in civil litigation for plaintiffs to add an unfair and deceptive trade practice claim to a breach of contract claim regardless of the presence of truly aggravating circumstances. While it has not done so here, in an appropriate case, the Court will not hesitate to award attorneys' fees in response to the filing of a boilerplate claim under N.C. Gen. Stat. § 75-1.1.

14

aggravating circumstances beyond the breach of contract that would rise to the level of a sufficient UDTP claim, the Court also finds that Defendants' alleged behavior at least arguably has an element of unfairness to it. Accordingly, the Court will exercise its discretion to deny an award of attorney's fees because Plaintiff's UDTP claim does not meet the level of frivolity and maliciousness required for such an award.

**D. Nirvana Extractions' 12(b)(6) Partial Motion to Dismiss**

Similarly, Nirvana Extractions has moved to dismiss Plaintiff's claim for UDTP and argues that it is entitled to attorney's fees as a result of the frivolous and malicious UDTP claim. For the same reasons discussed above, the Court finds that Plaintiff has failed to allege facts sufficient to sustain a claim for UDTP but will not award Nirvana Extractions attorney's fees based on this claim.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motions to Dismiss (Doc. Nos. 6, 8) are **GRANTED** in part and **DENIED** in part as described above; and

2. This case shall proceed towards a trial on the merits in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 31, 2023

Kenneth D. Bell
United States District Judge